UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY CHRETIEN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) No. 1:16-cv-00549-JAW |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred by failing to find his depression severe at Step 2 of the sequential evaluation process, failing to have this case evaluated by a psychologist or psychiatrist as he asserts was required by 42 U.S.C. § 421(h), and rejecting the uncontradicted expert opinion of examining consultant John L. Newcomb, M.D. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 2. I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found,

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, Finding 1, Record at 14; that, through his date last insured, he had a severe impairment of cervical spine disorder, Finding 3, *id.*; that, through his date last insured, he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R § 404.1567(b), except that he was able to lift and carry 10 pounds frequently and 20 pounds occasionally, sit for six hours in an eight-hour workday, stand for six hours in an eight-hour workday, walk for six hours in an eight-hour workday, kneel, crouch, crawl, and climb ramps and stairs frequently, and stoop and climb ladders, ropes, and scaffolds occasionally, Finding 5, *id.* at 18; that, through his date last insured, considering his age (46 years old, defined as a younger individual, on his alleged onset date of disability, and 51 years old, defined as an individual closely approaching advanced age, as of his date last insured), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 24; and that he, therefore, had not been disabled from September 2, 2008, his alleged onset date of disability, through December 31, 2013, his date last insured, Finding 11, *id.* at 25. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id*. (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff asserts that the ALJ's Step 2 determination that he had no severe impairment of depression was the product of two errors: (i) failing to have the case evaluated by a psychologist or psychiatrist as required by 42 U.S.C. § 421(h) and (ii) rejecting the uncontradicted expert

opinion of Dr. Newcomb, the evaluating psychiatrist. *See* Statement of Errors at 2-6.[2] For the reasons discussed *seriatim*, I find no error.

### A. Factual Background

The plaintiff did not initially allege that his disability was based on a mental impairment. *See, e.g.*, Record at 62. The commissioner made no arrangements for his examination by an agency mental-health consultant or the review of his case at either the initial or reconsideration stages by an agency nonexamining mental-health consultant. *See, e.g., id*. at 62-68, 70-77. Following the plaintiff's request for a hearing before an ALJ, his counsel asserted in a June 16, 2015, prehearing brief that he claimed disability based in part on depression, citing progress notes of treating physician James S. Smith, D.O., from 2009, March 2014, and January 2015, as well as Dr. Newcomb's May 26, 2015, report of examination and May 21, 2015, statement of ability to perform mental work-related activities. *See id*. at 200-202, 680-84. At the plaintiff's November 5, 2015, hearing before the ALJ, he described his treatment for, and symptoms of, depression, including difficulties staying focused, paying attention, and working around other people. *See id*. at 46-51.

The ALJ deemed the plaintiff's depression nonsevere, explaining:

> The [plaintiff] was diagnosed with, and prescribed medication for[,] an unspecified depressive disorder in June 2009. Medical records prior to December[] 2013[] document only occasional complaints of depression, disturbances of sleep, decreased energy, difficulty concentrating, feelings of worthlessness, and difficulty tolerating crowds. However, the [plaintiff] was typically described in the record as alert, oriented, pleasant, and rational with an appropriate mood and affect and intact memory, and with no delusions, abnormal speech, or hallucinations. Despite an increased number of reported symptoms, mental status examinations since December 2013[] have also typically been negative for flight of ideas, suicidal or homicidal ideation, psychomotor agitation, obsessions, compulsions, delusions,

---

[2] The plaintiff conceptualizes his errors as three prongs: failure to find his depression severe at Step 2, transgression of 42 U.S.C. § 421(h), and improper rejection of the Newcomb opinion. *See* Statement of Errors at 2. However, his second and third points constitute the substantive reasons for his first point, the overarching assertion of error at Step 2. Accordingly, I focus on his two substantive points of error.

4

> hallucinations, and loosening of associations. Furthermore, examiners in September 2014[] found the [plaintiff's] attention span and concentration to be normal in September[] 2014, and his memory to be intact, and his attention and concentration to be normal in September[] 2015.
>
> The medical evidence of record fails to demonstrate that the [plaintiff] has ever required psychiatric hospitalization. While he recently began counseling in September 2015, the evidence fails to demonstrate that he has sought or received psychotherapy prior to this, or at any time during the period at issue. The [plaintiff] was being prescribed Paroxetine prior to the date last insured, but the evidence does not demonstrate that he suffered significant adverse side effects from this medication.

*Id.* at 16-17 (citations omitted).

In accordance with the commissioner's psychiatric review technique, the ALJ then rated the degree of the plaintiff's limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See id.* at 17-18; 20 C.F.R. § 404.1520a(c).

He concluded that the plaintiff had mild limitation in activities of daily living, stating that the evidence prior to his date last insured indicated that he was "capable of performing a wide range of activities of daily living including helping with laundry, shopping, sweeping, mopping, vacuuming, checking on his father, and driving an automobile." Record at 17 (citations omitted). He noted, *inter alia*, that, since the plaintiff's alleged onset date of disability, he had performed "a variety of odd jobs such as painting ceilings, putting up ceiling fans, construction work, mowing lawns, snow blowing yards, laying floor tile, mixing 80 pound bags of cement, building a chicken house, and doing electrical job[s]." *Id.* (citations omitted).

He found that the plaintiff had mild limitation in social functioning, noting that he had been "capable of interacting with family members such as his wife and father" and shopping in stores, apparently had been able to interact with others while doing odd jobs, and did not appear to have significant difficulties interacting with treatment providers. *Id.*

He concluded that the plaintiff had mild limitation in concentration, persistence, or pace, noting that he had been able to maintain concentration, persistence, or pace sufficient to perform the cited activities of daily living and the completion of the cited odd jobs. *See id*. at 18.

He found that the plaintiff had experienced no episodes of decompensation of extended duration. *See id*.

Based on those findings, he determined that the plaintiff's mental impairment was nonsevere. *See id*.; *see also* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe[.]").

The ALJ later summarized and analyzed the Newcomb report and assessment, explaining that he gave Dr. Newcomb's opinion little weight. He noted:

> It was the May 21, 2015, opinion of John Newcomb, M.D., that the [plaintiff] has markedly limited ability to understand, remember, and carry out detailed instructions, understand and remember very short and simple instructions, maintain the attention and concentration sufficient to perform work tasks throughout an eight hour workday, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to the basic standards of neatness and cleanliness, respond appropriately to changes in a work setting, set realistic goals and make plans independently of others, complete a normal workday or work week without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Newcomb also opined on May 26, 2015, that the [plaintiff's] depressive syndrome has resulted in marked limitations in activities of daily living, marked limitations in social functioning, and marked limitations in concentration, persistence, and pace; that the [plaintiff] has suffered major depression to the point of disability since at least October 1, 2011; and that [his] condition has existed independently of alcohol and cannabis consumption and would still be present whether he consumed or not.

*Id*. at 22-23 (citations omitted). He explained:

6

> Dr. Newcomb only examined the [plaintiff] on one occasion at the request of the [plaintiff's] representative, and does not appear to have ever treated or examined [him] on or prior to the date last insured. Dr. Newcomb's May 21, 2015, opinion was rendered on a form on which the only choices were markedly limited or none. His opinions appear to be based in large part on the [plaintiff's] subjective allegations, and the severity of limitations cited [is] inconsistent with his contemporaneous presentation to treating sources in Exhibit 37F. Dr. Newcomb's opinions are also inconsistent with the evidence as a whole prior to the date last insured, including the minimal findings and treatment received and the [plaintiff's] reported activities of daily living. There is nothing in the evidence of record to corroborate the [plaintiff's] presentation to the attorney-arranged consultative examination in May of 2015 nor is there any credible evidence to support the doctor's opinion in particular to the time period prior to the date last insured. In light of the foregoing, Dr. Newcomb's opinions have been given little weight with respect to the period at issue.

*Id*. at 23.

## B. Failure To Have Case Evaluated Pursuant to 42 U.S.C. § 421(h)

The plaintiff asserts that the ALJ erred in failing to have this case evaluated by a psychologist or psychiatrist as required by 42 U.S.C. § 421(h). *See* Statement of Errors at 2-3. I disagree. Section 421(h) provides, in relevant part:

> An initial determination under subsection (a), (c), (g), or (i) shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure –
>
> > (1) in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment[.]

42 U.S.C. § 421(h).

As the commissioner argues, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 17) at 5-7, section 421(h) is inapposite because it imposes no duty on an ALJ. Subsections (a), (c), (g), and (i) pertain, respectively, to initial determinations by state agencies, review of state-agency determinations on the commissioner's own motion, initial determinations by the commissioner when a state agency is unavailable or has substantially failed

in its duty to make such determinations, and review of continued eligibility for benefits in cases in which individuals have been determined to be disabled. *See* 42 U.S.C. § 421(a), (c), (g), (i). Conspicuously absent is any reference to subsection (d), which covers hearings before ALJs. *See id*. § 421(d), (h).

"Because 42 U.S.C. § 421(d), which covers hearings before an ALJ, is excluded from § 421(h)'s purview, an ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist in making an initial determination of mental impairment." *Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999). *See also, e.g.*, *Bernal v. Bowen*, 851 F.2d 297, 302 (10th Cir. 1988) (42 U.S.C. § 421(h) imposes no "absolute duty" on either the commissioner or an ALJ to have a psychologist or psychiatrist complete psychiatric review technique report); *Boston v. Astrue*, Civil No. 10-cv-00250-PB, 2011 WL 2491120, at *7 n.15 (D.N.H. June 22, 2011) ("While best practices counsel that the ALJ should have consulted with a psychiatrist or psychologist before rendering his opinion, 42 U.S.C. § 421(h) did not require him to do so . . . . By its terms, the precatory language of Section 421(h) does not apply to Section 421(d), which deals with ALJ hearings.").

The omission of mention of subsection (d) from section 421(h) is no accident. As the *Plummer* court notes, "the [c]ommissioner's regulations provide an ALJ with greater flexibility than other hearing officers." *Plummer*, 186 F.3d at 433. While, "[i]n all cases, . . . the ALJ has a duty to consider all evidence of impairments in the record[,]" the ALJ has "several options available" in assessing mental impairments pursuant to the commissioner's psychiatric review technique: he or she can "complete and sign the document without the assistance of a medical adviser; . . . call a medical adviser for assistance in completing the document; or . . . remand the case for completion of the document and a new determination." *Id*.

Here, the ALJ chose to make his own evaluation of the severity of the plaintiff's mental impairment pursuant to the psychiatric review technique.

At oral argument, the plaintiff's counsel conceded that section 421(h) does not apply at the ALJ hearing level but relied on *Brown v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00166-JAW, 2011 WL 1326862 (D. Me. Apr. 5, 2011) (rec. dec., *aff'd*, Apr. 25, 2011), for the proposition that remand nonetheless is warranted on the basis of the commissioner's failure to obtain review by a qualified psychologist or psychiatrist at the initial level. *See also* Statement of Errors at 3. She asserted that, because of the error at the initial level of review, the ALJ lacked a basis for evaluating her client's mental impairment.

In *Brown*, this court construed section 421(h) to require remand for further record development when an ALJ found no severe mental impairment in circumstances in which the claimant had not advanced depression as a work-related impairment in her application for benefits, an agency nonexamining medical consultant had perceived no need for referral to a mental-health expert on initial review, the record contained a handful of references to depression prior to the claimant's date last insured, the claimant had been prescribed antidepressant medication, and the only relevant expert evaluation of record, an examining consultant's report submitted by the claimant, found a severe mental impairment. *See Brown*, 2011 WL 1326862, at *4.

Yet, as the commissioner observes, *see* Opposition at 5, the *Brown* court acknowledged that "there [was] precedent to the effect that not every reference to depression requires a referral to a mental health expert, even where an antidepressant has been prescribed[,]" *Brown*, 2011 WL 1326862, at *3. In addition, the *Brown* court observed that (i) at least one court had questioned the extent to which section 421(h) applied to ALJ assessments, (ii) its research had uncovered no First Circuit or District of Maine precedent related to section 421(h), (iii) "the mine run of [S]tep

2 cases that have been affirmed over objection involve psychiatric review techniques performed by consulting experts[,]" and (iv) the commissioner had "not actually mount[ed] an argument addressed to § 421(h) despite [the claimant's] citation of the statute in her statement of errors." *Id.* at *3-4. In addition, as counsel for commissioner observed at oral argument, the *Brown* court did not parse the language of section 421(h). *See id.*

Here, the commissioner joins issue on the point, contending that section 421(h) on its face does not apply. *See* Opposition at 5-6. I conclude that *Brown* does not foreclose fresh consideration of the question of whether section 421(h) imposes a duty on ALJs to obtain the assistance of a mental-health expert and that, for the reasons discussed above, it does not. Indeed, at hearing, the plaintiff's counsel conceded as much.[3]

Hence, remand is unwarranted on the basis of this point of error.

### C. Rejection of Uncontradicted Expert Opinion of Dr. Newcomb

The plaintiff next, and finally, argues that the ALJ erred in rejecting the uncontradicted expert opinion of Dr. Newcomb and improperly substituting his own lay judgment that the plaintiff's mental impairment was nonsevere. *See* Statement of Errors at 2, 5 (citing *Nguyen v. Chater*, 172 F.3d 31, 34 [sic] (1st Cir. 1999); *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)).

At oral argument, the plaintiff's counsel clarified that her client's point was not that the ALJ was compelled to accept the Newcomb opinion but, rather, that he could not reject it absent reliance on expert opinion to the contrary.

---

[3] At oral argument, the plaintiff's counsel cited no authority other than *Brown* for her new argument that remand was warranted on the basis of the *state agency's* failure on initial review to refer this case for a psychological or psychiatric assessment. However, the decision before this court is that of the ALJ. Indeed, the claimant in *Brown* sought remand on the basis of the *ALJ's* failure to refer that case for psychological or psychiatric review. *See Brown*, 2011 WL 1326862, at *3.

As the commissioner rejoins, *see* Opposition at 11-12, *Nguyen* is inapposite because it pertains to assessment at Step 4 of a claimant's RFC, not assessment at Step 2 of whether an impairment is severe, *see Nguyen*, 172 F.3d at 35 ("The [c]ommissioner suggests that despite [a treating physician's] opinion, the medical record supported the ALJ's determination that claimant was fully capable of performing sedentary work. As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *see also, e.g., Small v. Colvin*, No. 2:14-cv-042-NT, 2015 WL 860856, at *7 (D. Me. Feb. 27, 2015) (agreeing with commissioner, in case involving Step 2 analysis, that *Nguyen* was distinguishable because it pertained to Step 4). The same is true of *Chapo*, the second case that the plaintiff cites. *See Chapo*, 682 F.3d at 1289-91 (reviewing an ALJ's justification at Step 4).[4]

The plaintiff, accordingly, fails to demonstrate that, in the context of determining that his mental impairment was nonsevere, the ALJ erred in assigning little weight to the Newcomb opinion absent reliance on contrary expert opinion.

The plaintiff makes two additional points in passing, neither of which furnishes a basis for remand. He contends that the ALJ erred in ignoring Dr. Newcomb's assignment of a Global Assessment of Functioning ("GAF") score of 40 and assigning little weight to the Newcomb opinion on the basis that it was retrospective. *See* Statement of Errors at 3-5 & nn. 3-5.[5]

---

[4] In any event, as the commissioner points out, *see* Opposition at 12, even if *Nguyen* applied at Step 2, an ALJ is not "precluded from rendering common-sense judgments about functional capacity based on medical findings," *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). The plaintiff does not explain, and it is not self-evident, why the ALJ could not make a commonsense judgment that his mental impairment prior to his date last insured was nonsevere on the bases of documentation of only occasional complaints related to that impairment, largely normal findings on mental status examination, conservative treatment, and the plaintiff's wide range of activities. *See* Record at 16-18.

[5] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social,

As the commissioner argues, *see* Opposition at 11, to the extent that the plaintiff means to challenge the bases on which the ALJ accorded little weight to the Newcomb opinion, he waives that point by failing to discuss all but one of those bases, *see, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

In any event, his criticisms of the ALJ's handling of the Newcomb opinion founder on the merits.

First, the fact that the ALJ ignored one aspect of the Newcomb report – the GAF score – is not fatal absent more. *See, e.g., Rodriguez v. Secretary of Health & Human Servs.*, No. 90-1039, 1990 WL 152336, at *1 (1st Cir. Sept. 11, 1990) ("An ALJ is not required to expressly refer to each document in the record, piece-by-piece."). The plaintiff fails to explain how the ALJ's failure to address the GAF score mattered, particularly in view of the totality of his reasons for according little weight to that opinion. *See* Statement of Errors at 3 n.3; Record at 22-23.

Second, the ALJ's handling of the Newcomb opinion readily passes muster pursuant to applicable standards. "A onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons." *Tompkins v. Colvin*, No. 1:13-CV-73-GZS, 2014 WL 294474, at *3 (D. Me.

---

and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 31 to 40 reflects "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.* (boldface omitted). In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores. *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").

Jan. 27, 2014) (citation and internal quotation marks omitted). Nonetheless, the ALJ provided several good reasons for assigning that opinion little weight, including that Dr. Newcomb met with the plaintiff only once, apparently had not treated or examined him prior to his date last insured, provided his functional capacity assessment on a form in which the only choices were "markedly limited" or "none," appeared to base his opinions largely on the plaintiff's subjective allegations, and expressed opinions that were contradicted by other evidence of record, including contemporaneous notes of treating physicians. *See* Record at 22-23. These are well-recognized bases in Social Security law for rejecting even a treating physician's opinions. *See* 20 C.F.R. § 404.1527(c)(2) (factors relevant to evaluation of medical opinions are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant); *Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *3 (D. Me. Jan. 29, 2014) (ALJ's assignment of little weight to treating physician's opinion passed muster when based, *inter alia*, on inconsistency between treatment notes and treating physician's conclusions and fact that opinion appeared to be based primarily on the claimant's subjective allegations, "well-recognized bases in Social Security law for rejection of a treating physician's conclusions"); *Huston v. Colvin*, No. 2:12-cv-00282-JAW, 2013 WL 3816615, at *8 (D. Me. July 19, 2013) (ALJ's assignment of little weight to treating-source opinion passed muster when predicated, *inter alia*, on fact that opinion appeared to be largely based on claimant's subjective allegations, the source used a form providing only the option of indicating a "marked" impairment,

and the degree of limitation was not supported by the source's own objective findings or consistent with the evidence of record as a whole).[6]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 15th day of October, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[6] The plaintiff also argues that, although the ALJ "went to great lengths to attack [his] credibility[,] . . . an adverse credibility determination cannot be substituted for the substantial medical evidence required as a basis for an RFC determination." Statement of Errors at 5. Thus, he reasons, "the credibility assessment cannot alter the result." *Id*. I construe this as an argument that any error is not harmless, a point I do not reach because I find no error. In any event, because the ALJ deemed the plaintiff's mental impairment nonsevere, he did not assess his mental RFC. *See* Finding 5, Record at 18.